**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| MARY GRZANECKI, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | Case No. 19 C 05032 |
| | ) | |
| DARDEN RESTAURANTS, et al., | ) | Judge Jorge L. Alonso |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Mary Grzanecki filed this *pro se* action against Defendants GMRI, Inc. d/b/a Olive Garden ("GMRI") and Carlos Pappa for employment discrimination.[1] Defendants now move to compel arbitration pursuant to Fed. R. Civ. P. 12(b)(3) and/or Fed. R. Civ. P. 12(b)(6) and 9 U.S.C. § 4. For the reasons that follow, Defendants' motion to compel arbitration is granted [24].

**BACKGROUND**

According to her complaint, plaintiff worked as a server at the Olive Garden in Lincolnwood, Illinois from about December 2016 through June 2017. Plaintiff alleges that she was subjected to harassment based on her color, race, and age and that, when she complained to the defendants about her treatment, they fired her in retaliation. Plaintiff alleges the defendants violated Title VII of the Civil Rights Act, 42 U.S.C. § 2000e *et seq*. and the Age Discrimination in Employment Act ("ADEA"), 28 U.S.C. § 621 *et seq*.

Defendants contend that they entered into an arbitration agreement with plaintiff around the time she was hired, and that the arbitration agreement bars her from pursuing her claims in this

[1] Grzanecki names "Darden Restaurants d/b/a Olive Garden" and "Carlos Pappas" as defendants in her complaint. (*See generally* Pltf.'s Compl., ECF No. 10.) In their joint answer, defendants state they have been incorrectly named and identify themselves as "GMRI, Inc. d/b/a Olive Garden" and "Carlos Pappa," respectively. (*See* Am. Joint Answer, ECF No. 34.) GMRI is a subsidiary of Darden Restaurants, Inc.

Court. GMRI uses a so-called "Dispute Resolution Process" ("DRP") created by its parent company to resolve all employment-related claims. (*See* Defs.' Mot., ECF No. 24, Ex. A at ¶ 6.) The DRP consists of four "steps" to resolve an employee's dispute, the final step being binding arbitration. (*Id.*) As a condition of employment, all employees must agree to adhere to the DRP. During the hiring process, all new employees are provided with a copy of a DRP agreement. (*Id.* at ¶¶ 6-7.)

In relevant part, the DRP agreement states:

> The DRP, instead of court actions, is the sole means for resolving covered employment-related disputes. Disputes eligible for DRP must be resolved only through DRP, with the final step being binding arbitration heard by an arbitrator. This means DRP-eligible disputes will not be resolved by a judge or jury. Neither the Company nor the Employee may bring DRP-eligible disputes to court. The Company and the Employee waive all rights to bring a civil court action for these disputes.

(*Id.*, Ex. 1 at 3.) The DRP agreement also specifically mentions that claims brought under Title VII and the ADEA are subject to arbitration. (*Id.*) Further, in discussing arbitration, the DRP agreement states that "[t]he arbitrator has the sole authority to determine whether a dispute is arbitrable and whether it has been timely filed or pursued." (*Id.*, Ex. 1 at 7.)

Included in the DRP agreement, on page 11, is a "Dispute Resolution Process acknowledgment" ("the DRP acknowledgment"). (*Id.*, Ex. 1 at 11.) In relevant part, the DRP acknowledgment states:

> This agreement contains the requirements, obligations, procedures and benefits of the Dispute Resolution Process (DRP). **I acknowledge that I have received and/or have had the opportunity to read this arbitration agreement. I understand that this arbitration agreement requires that disputes that involve the matters subject to the agreement be submitted to mediation or arbitration pursuant to the arbitration agreement rather than to a judge or jury in court.** I agree as a condition of my employment, to submit any eligible disputes I may have to the DRP and to abide by the provisions outlined in the DRP. I understand this includes, for example, claims under state and federal laws relating to harassment or discrimination, as well as other employment-related claims as

      > defined by the DRP. Finally, I understand that the Company is equally bound to all of the provisions of the DRP.

(*Id*.) (emphasis in original).

Along with their motion, defendants submit the declaration of Melissa Ingalsbe, director of dispute resolution for GMRI's parent company. (*See generally id*., Ex. A.) Based on her review of relevant business records, Ingalsbe states that plaintiff executed the DRP acknowledgment on December 5, 2016 and that there is no record of plaintiff objecting to the DRP during her employment. (*Id.* at ¶¶ 8-10.) Defendants also include a copy of the DRP agreement as well as a copy of the DRP Acknowledgment signed and dated by plaintiff. (*Id*., Exs. 1-2.)

Plaintiff responds that there is no arbitration agreement. Notably, plaintiff does not dispute that she signed the DRP acknowledgment on December 5, 2016. (*See* Pltf.'s Resp., ECF No. 45 at 2.) However, plaintiff submits her own declaration in which she unequivocally states that she was not provided with the full DRP agreement when she signed the DRP acknowledgment nor was she told the DRP Acknowledgment was part of a larger document. (*See* Grzanecki Decl., ECF No. 37 at ¶¶ 4-5.) Plaintiff states she was only provided a one-page DRP acknowledgment and was told it was a "non-negotiable agreement" that she "had to sign." (*Id.* at ¶ 4.) Plaintiff further states that she did not draft the DRP acknowledgment, "nor did [she] understand it." (*Id*. at ¶ 6.) Given these circumstances, plaintiff contends an agreement to arbitrate was never formed.[2]

[2] After filing its motion to compel arbitration, defendants filed a partial motion to dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6). After filing an initial response to defendants' motion to compel arbitration along with her declaration, plaintiff sought a consolidated briefing schedule to respond to both of defendants' motions, which the Court granted. Thereafter, plaintiff filed separate responses to each of defendants' motions along with a supplemental declaration. In reaching its ruling, the Court considers both of plaintiff's responses to the motion to compel arbitration, as well as both her declarations. *See Ray v. Clements*, 700 F.3d 993, 1002-03 (7th Cir. 2012) (noting federal courts often relax procedural or technical requirements for *pro se* litigants).

## LEGAL STANDARD

Motions to compel arbitration concern venue and are properly addressed under Federal Rule of Civil Procedure 12(b)(3). *Grasty v. Colo. Tech. Univ.*, 599 F. App'x 596, 597 (7th Cir. 2015) (citing *Jackson v. Payday Fin., LLC*, 764 F.3d 765, 773 (7th Cir. 2014)); *Johnson v. Orkin, LLC*, 556 F. App'x 543, 544 (7th Cir. 2014) (an arbitration clause is "simply a type of forum-selection clause," and a motion seeking dismissal based on an agreement to arbitrate therefore should be decided under Rule 12(b)(3)). The Court may consider materials outside the pleadings when evaluating such a motion. *Johnson*, 556 F. App'x at 544-45.

The Federal Arbitration Act ("FAA") governs the enforceability of arbitration clauses in state and federal courts. *Jain v. de Méré*, 51 F.3d 686, 688 (7th Cir. 1995). Under the FAA, an arbitration agreement in "a contract evidencing a transaction involving commerce . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. If a court "determines that the making of the arbitration agreement is seriously disputed, 'the court shall proceed summarily to the trial thereof.'" *Tinder v. Pinkerton Security*, 305 F.3d 728, 735 (7th Cir. 2002) (quoting 9 U.S.C. § 4). "The party opposing arbitration must identify a triable issue of fact concerning the existence of the agreement in order to obtain a trial on the merits of the contract." *Id*. "[T]he evidence of the non-movant is to be believed and all justifiable inferences are to be drawn in his favor." *Id.*

## ANALYSIS

Defendants seek to compel plaintiff to pursue her claims in arbitration, pursuant to GMRI's "Dispute Resolution Process" ("DRP"). Defendants argue that, by signing the DRP acknowledgment form shortly after she was hired, plaintiff formed an agreement with defendants to arbitrate her discrimination claims. Plaintiff responds by arguing: (1) that the parties never

actually entered into an arbitration agreement; (2) that, even assuming there is a valid arbitration agreement, defendants have waived their rights to arbitration; and (3) that the agreement is unconscionable and therefore unenforceable. Defendants contend that, according to the terms of the DRP agreement, the parties delegated authority to the arbitrator to consider plaintiff's objections to arbitration as well as the merits of plaintiff's discrimination claims, so the Court must compel arbitration without addressing plaintiff's objections.

Under the FAA, arbitration agreements are to be evaluated according to the same standards as any other contract. *Rent-A-Ctr., Inc. v. Jackson*, 130 S. Ct. 2772, 2776 (2010); *see also* 9 U.S.C. § 2.[3] Typically, a court must grant a motion to compel arbitration where the parties have a written arbitration agreement and the asserted claims are within its scope. 9 U.S.C. §§ 3-4; *Sharif v. Wellness Int'l Network, Ltd.*, 376 F.3d 720, 726 (7th Cir. 2004). In other words, under the FAA, a court can only rule on certain "gateway" questions of whether the parties' dispute belongs in arbitration, and cannot rule on the potential merits of the underlying claims. *AT&T Techs., Inc. v. Communs. Workers of Am.*, 106 S. Ct. 1415 (1986). Following this principle, courts presume that issues of waiver and of enforceability of an arbitration agreement—which would encompass plaintiff's unconscionability argument—are for the arbitrator to decide. *See Howsam v. Dean Witter Reynolds, Inc.*, 123 S. Ct. 588, 592-93 (2002) (noting "the presumption is that the arbitrator should decide allegations of waiver, delay, or a like defense to arbitrability") (quotations omitted); *see also Janiga v. Questar Capital Corp.*, 615 F.3d 735, 742 (7th Cir. 2010) (finding plaintiff's

[3] The arbitration agreement here falls under the purview of the FAA. *See Chambliss v. Darden Restaurants, Inc.*, No. 1:12-cv-485-SEB-MJD, 2012 WL 4936400, at *2 (S.D. Ind. Oct. 15, 2012) (finding specifically that DRP like the one in this case is an arbitration agreement contemplated by FAA); *see also Penn v. Ryan's Family Steak Houses, Inc.*, 269 F.3d 753, 758 (7th Cir. 2001) (noting generally that it has become common for employers to require employees to sign arbitration agreements as a condition of employment and that there are no "lingering doubts as to whether these agreements are enforceable under the FAA").

unconscionability argument related to whether arbitration agreement is enforceable, which is an issue "squarely in the arbitrator's box").

However, because "arbitration is a matter of contract," *Rent-A-Ctr., Inc.*, 130 S. Ct. at 2777, parties are free to contract around this presumption; likewise, parties can agree to have an arbitrator decide the gateway questions typically decided by a judge. *Id.* at 2772; *see also Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 529 (2019) (noting "parties may agree to have an arbitrator decide not only the merits of a particular dispute but also "gateway" questions of "arbitrability") (quotations omitted). Accordingly, the Court looks to the language of the arbitration agreement at issue here.

In relevant part, the DRP agreement states only "[t]he arbitrator has the sole authority to determine whether a dispute is arbitrable and whether it has been timely filed and pursued." (ECF No. 24, Ex. 1 at 7.) This language certainly does not change the presumption that an arbitrator, and not the Court, should address plaintiff's arguments regarding waiver and unconscionability. To the contrary, at least with regard to waiver, the language suggests the parties specifically reserved this issue for the arbitrator. Accordingly, the Court will not address plaintiff's arguments regarding waiver and unconscionability.

This leaves the question of whether the Court can properly consider the gateway issue of whether the parties actually formed an arbitration agreement at all. The defendants appear to argue the DRP agreement delegates even this threshold issue to the arbitrator, (Defs.' Memo in Support, ECF No. 25 at 6-7), but the Court disagrees. As quoted above, the DRP agreement does contain a delegation clause: "[t]he arbitrator has the sole authority to determine whether a dispute is arbitrable." (ECF No. 24, Ex. 1 at 7.) Whether a dispute is "arbitrable" may include certain gateway questions usually decided by a court, like whether a certain party is bound by an arbitration clause

or whether a particular controversy falls within the scope of an arbitration clause. *See Howsam*, 123 S. Ct. at 592; *see also Rent-A-Ctr., Inc.*, 130 S. Ct. at 2777-78. But whether a dispute is "arbitrable" generally does not include the question of whether the parties *actually formed* an arbitration agreement. Unless the arbitration agreement delegates this specific question to the arbitrator, it is for the Court to decide. *Janiga*, 615 F.3d at 741-42 (analyzing issue and citing authority); *see also Sphere Drake Ins. Ltd. v. All Am. Ins. Co.*, 256 F.3d 587, 591 (7th Cir. 2001) (observing that "as arbitration depends on a valid contract an argument that the contract does not exist can't logically be resolved by the arbitrators"). Here, the DRP agreement does not delegate this question to the arbitrator, so the Court turns to the issue of whether the parties actually entered into the arbitration agreement.

State law governs the question of whether the parties formed an enforceable arbitration agreement. *Janiga*, 615 F.3d at 743; *see also Tinder*, 305 F.3d at 733. The parties agree Illinois law applies here. (*See* ECF No. 25 at 8-9; *see also* ECF No. 45 at 2-4.) Under Illinois law, an enforceable arbitration agreement must have the "basic ingredients of a contract," i.e., an offer, an acceptance, and consideration. *Melena v. Anheuser-Busch, Inc.*, 847 N.E.2d 99, 109 (Ill. 2006). Defendants have produced the DRP Agreement and the DRP acknowledgment, which is signed and dated by plaintiff, to show offer and acceptance. This is sufficient under Illinois law. *See e.g.*, *Moreno v. Progistics Distribution, Inc.*, No. 18 C 1833, 2018 WL 3659348, at *4 (N.D. Ill. Aug. 2, 2018) (applying Illinois law and finding an "[a]cknowledgment [plaintiff] undisputedly received and signed constitutes both an offer and an acceptance of arbitration"); *see also Janiga*, 615 F.3d at 743 (noting plaintiff's signature on acknowledgment form "objectively demonstrated his assent to the contract"). Regarding the consideration requirement, the DRP acknowledgment plainly states that both plaintiff and GMRI are "equally bound to all provisions of the DRP." (ECF No.

24, Ex. 1 at 11.) Under Illinois law, a mutual promise to arbitrate is sufficient consideration. *Fuqua v. SVOX AG*, 13 N.E.3d 68, 80 (Ill. App. Ct. 2014); *see also Cantrell v. Fidelitone, Inc.*, No. 15 C 10696, 2016 WL 1161326, at *4 (N.D. Ill. Mar. 24, 2016) (applying Illinois law).

Plaintiff argues that under the circumstances, there was no "coherent offer" or acceptance necessary to form a binding contract to arbitrate. (ECF No. 45 at 2-4.) Plaintiff states she was never given the full DRP agreement but instead was only provided with the one-page acknowledgment form. (ECF No. 37 at ¶¶ 4-5.) Plaintiff further states that she was never told that the DRP acknowledgment was part of a larger document, nor was she told to read the acknowledgment or consult with an attorney before signing. Plaintiff contends she was told the form was "non-negotiable," and she did not understand it when she signed it. (*Id*. at ¶¶ 4-6.) Finally, plaintiff argues the one-page acknowledgment, on its own, cannot constitute an offer because it is "nonsensical and internally inconsistent." (ECF No. 45 at 2-3.) Even accepting as true plaintiff's declarations, which the Court must at this stage, plaintiff cannot escape that the parties formed an agreement to arbitrate, nor does plaintiff identify an issue of fact concerning the existence of the agreement that would warrant a trial on this issue. *Tinder*, 305 F.3d at 735; 9 U.S.C. § 4.

First, plaintiff cannot successfully argue she did not accept the agreement because she did not read or understand the acknowledgment form because, under Illinois law, a party who signs a contract is deemed to have "read and underst[ood] its contents." *Faulkenberg v. CB Tax Franchise Sys., LP*, 637 F.3d 801, 809 (7th Cir. 2011) (applying Illinois law and affirming enforcement of arbitration clause). It is undisputed that plaintiff signed the DRP acknowledgment. Further, even assuming plaintiff was not provided the full DRP agreement before signing the DRP acknowledgment, this fact does not affect the issue of contract formation; the Seventh Circuit has found arbitration agreements enforceable even where a party reviews and signs only an

acknowledgment form like the one at issue here. *See e.g., Johnson v. W. & S. Life Ins. Co.*, 598 F. App'x 454, 455 (7th Cir. 2015) (affirming district court's enforcement of arbitration agreement where plaintiff signed agreement stating she had read and understood attendant "Dispute Resolution Program" booklet); *Janiga*, 615 F.3d at 738 (finding parties formed agreement to arbitrate where plaintiff stated he saw only the single page that he signed). Finally, plaintiff's argument that the DRP acknowledgment could not, on its own, constitute an offer because it is "nonsensical and internally inconsistent" is without merit. The plain language of the DRP acknowledgment states that plaintiff has received and read the arbitration agreement and that plaintiff agrees to submit any disputes to mediation and arbitration "rather than to a judge or jury in court." (ECF No. 24, Ex. 1 at 11.) The Seventh Circuit dealt with strikingly similar language in *Janiga* and found that, even considering that the plaintiff spoke only limited English and only admitting to seeing the signature page of the agreement, the parties had nonetheless formed a contract to arbitrate. *Id*. at 738. So too here.

## CONCLUSION

Defendants' motion to compel arbitration is granted [24]. Accordingly, defendants' motion to dismiss for failure to state a claim [31] and plaintiff's motion to dismiss certain claims without prejudice [42] are denied as moot. This action is dismissed without prejudice,[4] and the parties shall proceed to arbitration. Civil case terminated.

**SO ORDERED.**

**ENTERED: April 16, 2020**

**HON. JORGE ALONSO**
**United States District Judge**

[4] Dismissal without prejudice is appropriate here. *See Johnson*, 598 F. App'x at 456; *see also Chausse v. Career Educ. Corp.*, No. 16 C 164, 2017 WL 1428733, at *3 (N.D. Ill. Apr. 20, 2017)